IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIJAH SIMS, JR.                          Case No. 3:11-cv-00916-MA

             Plaintiff,              OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

           Defendant.

GEORGE J. WALL
1336 East Burnside Street, Suite 130
Portland, OR 97214

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

CHRISTOPHER J. BRACKETT
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Elijah Sims, Jr. seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB and SSI on March 30, 2007, alleging disability beginning March 15, 2003, due to chronic nerve pain in the neck and back.[1] Plaintiff meets the insured status requirements for a DIB application through December 31, 2008.

After being denied at the initial and reconsideration levels, plaintiff requested and was granted a first hearing before an

---

[1] In his opening brief, plaintiff requests the court to amend his alleged onset date of disability to March 21, 2007, his Fiftieth birthday. Pl. Br. (#22), p. 2. Plaintiff also withdraws his Title XVI claim. *Id.* This court has jurisdiction to review the ALJ's 2013 decision, which is the final agency decision. Thus, we decline to accept plaintiff's amended alleged onset date and review the ALJ's decision as is, including plaintiff's *original* alleged onset date of disability of March 15, 2003. Because this court affirms the ALJ's decision, it is unnecessary to address the withdrawal of plaintiff's Title XVI claim.

administrative law judge (ALJ) on January 7, 2010. Plaintiff appeared with his attorney and testified. A vocational expert (VE), Paul K. Morrison, and plaintiff's wife, Tricia R. Sims, also testified. The ALJ issued an unfavorable decision on March 16, 2010, which plaintiff appealed to this court. Tr. 438. Based on an unopposed motion by the Commissioner, on April 20, 2012, this court reversed and remanded the decision pursuant to Sentence Six of 42 U.S.C. § 405(g) for further administrative proceedings. *See* Tr. 461.

The same ALJ held a second hearing on June 17, 2013, at which plaintiff appeared with his attorney, but plaintiff did not provide any testimony relevant to his claims. On June 27, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's June 27, 2013 decision became the final decision of the Commissioner for purposes of review.

Born in 1957, plaintiff was 56 years old on the date of the ALJ's 2013 adverse decision. Plaintiff completed high school. Plaintiff has past relevant work as a credit collections clerk.

### THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof

at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairment: degenerative disc disease of the cervical and lumbar spine. At step three, the ALJ found that plaintiff's impairment, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform less than a full range of medium work as defined in 20 C.F.R. § 404.1567(c) except he cannot lift or carry more than 25 pounds occasionally and cannot perform repetitive bending, lifting or stooping. Plaintiff cannot sit or stand in a stationary position for more than two consecutive hours at a time.

At step four, the ALJ found plaintiff is able to perform past relevant work as a credit collections clerk, and thus did not reach step five. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from March 15, 2003, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate plaintiff's credibility; (2) the ALJ failed to properly consider the medical evidence including the medical opinions of treating physicians John Denker, M.D., and Harold Lee, M.D.; (3) the ALJ failed to find chronic pain syndrome a severe impairment at step two; (4) the ALJ failed to properly evaluate the lay testimony of plaintiff's wife, Tricia R. Sims; and (5) the ALJ erred at step four.

## I.   ALJ Did not Err in Evaluating Plaintiff's Credibility

### A.   Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.12629, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161

(9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

**B.    Analysis**

At the January 7, 2010 hearing, plaintiff testified that he experiences chronic pain in his back down to his right hamstring and groin area. Tr. 38. Plaintiff testified that he tried physical therapy and acupuncture and currently takes pain medication to relieve his pain. Tr. 38, 45. Plaintiff also testified that he cannot type on a keyboard without experiencing pain in the back of his neck; specifically, he states that the pain occurs while looking down and typing on a keyboard. Tr. 40, 44. Plaintiff testified that he does not spend a lot of time on his computer, only to briefly check email. Tr. 44. Plaintiff further testified

that he helps his four children get ready for school in the morning. Tr. 46.

In a May 4, 2007 Function Report, plaintiff noted that he tries to help with small household chores such as laundry and light cleaning. Tr. 161. In describing a regular day, plaintiff stated that he spends most of his day relaxing in a special recliner with extra high back support. *Id.* Plaintiff indicated that when traveling outside his home, he prefers to drive; he noted that he goes grocery shopping one to two times a month. Tr. 163. Plaintiff noted that he prepares quick meals such as sandwiches, salads, and frozen meals, two times a week. Tr. 164. Plaintiff also stated that he completes light yard work such as cutting the lawn with a self-propelled mower. Tr. 164. In terms of physical activities, plaintiff indicated that he can lift light weights and walk a quarter of a mile before needing to rest.

In a May 4, 2007 Pain and Fatigue Questionnaire, plaintiff noted a chronic aching, burning, and stinging pain in his lower lumbar area and right rotor arm. Tr. 169. Plaintiff stated that his pain is made worse with lifting, arm motions, sitting for a prolonged period, and bending and stooping. *Id.* Plaintiff noted that he takes Mobic and Darvocet for pain relief, which makes him drowsy after three or four hours.

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be

expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided three clear and convincing reasons, citing specific record evidence, which undermine his subjective complaints.[2]

### 1. inconsistent with objective medical evidence

The ALJ specifically found plaintiff's subjective allegations of debilitating pain inconsistent with the medical record. Tr. 419. When the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v. Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.

In the decision, the ALJ noted that plaintiff's laboratory imaging is inconsistent with his allegations of pain. Tr. 420. In fact, plaintiff's 2004 magnetic resonance imaging (MRI) revealed a

---

[2] In an October 4, 2012 order, the Appeals Council vacated the March 16, 2010 ALJ decision on the basis of new evidence and an error in evaluating plaintiff's credibility. Tr. 470. The Appeals Council ordered the ALJ to issue a new decision and further evaluate plaintiff's credibility. Thus, this court only has jurisdiction to review the ALJ's reasons for discounting plaintiff's testimony stated in the June 27, 2013 decision, which is the final agency decision. To the extent that plaintiff challenges adverse credibility reasons given by the ALJ in the March 16, 2010 decision, these arguments are moot. Pl. Br. (#22), pp. 20-23.

small central disc protrusion at L5-S1 without nerve root
compression. Tr. 339. Following plaintiff's cervical fusion surgery
in January 2004, a March 29, 2004 x-ray of plaintiff's cervical
spine was unremarkable. Tr. 352. After reviewing plaintiff's most
recent MRI in April 20, 2010, treating physician, John Denker, M.D.
noted on the MRI report that the scan reflects minimal changes from
plaintiff's previous MRI in 2004 and that the minimal "scan changes
do not reflect patient's symptoms as patient's symptoms reported to
be on [the] left." Tr. 632-33.

Additionally, the ALJ noted that examining orthopedic surgeon,
Stephen Brenneke, M.D., indicated in his February 16, 2010
examination report that plaintiff may be exaggerating his level of
pain and limited capabilities. Tr. 394. Dr. Brenneke noted that
plaintiff provided poor effort on testing of his range of motion
and muscle strength testing. Tr. 395-96. In fact, Dr. Brenneke
documented normal straight leg raise testing, no loss of sensation
in upper or lower extremities, intact reflexes, and some localized
tenderness in the lower lumbar area. Tr. 395. Dr. Brenneke opined
that plaintiff's severity of pain was inconsistent with the
objective examination findings. Tr. 396.

Moreover, the ALJ noted that the majority of the medical
evidence indicated relatively normal objective findings, including
examinations from treating physicians Drs. Lee and Denker. *See*
*generally* Tr. 339, 373, 419-20, 580, 593. As the ALJ stated in the

9 - OPINION AND ORDER

decision, examining neurologist Vitalie Lupu, M.D. noted full muscle strength, full reflexes, normal muscle tone, and slow gait in a February 25, 2010 examination. Tr. 637. Dr. Lupu also noted intact sensation and reflexes, a negative Romberg test, and no resting tremors. *Id.* Dr. Lupu opined that plaintiff's neurological examination revealed no evidence of cervical or lumbosacral radiculopathy. Tr. 637.

In short, the ALJ reasonably concluded that the objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted his credibility on this basis.

### 2. contradictory testimony

The ALJ provides several examples of plaintiff's contradictory statements at the hearing and in the record regarding his symptoms and other testimony as a reason to discount his credibility. Tr. 419, 162, 249-50. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing plaintiff's credibility." *Tommasetti,* 533 F.3d at 1039.

As the ALJ accurately stated, plaintiff informed Drs. Lee and Denker that he is unable to go back to his past relevant work, a sedentary job. Tr. 250, 372, 419. In contrast, plaintiff reported to his treating surgeon, Darrell C. Brett, M.D., that his employer went out of business. Tr. 338. In his decision, the ALJ also

10 - OPINION AND ORDER

discussed that plaintiff noted in the May 4, 2007 Function Report that he needs assistance with bathing and using the toilet, yet in a March 11, 2013 consultative examination, plaintiff reported to Kim Webster, M.D., that he needs no assistance with his activities of daily living. Tr. 162, 419, 578.

Other inconsistent statements in the record further support the ALJ's reasoning. For example, plaintiff noted in a May 4, 2007 Function Report that he could only lift light weights and that lifting weight would cause pain in his cervical and lower back area. Tr. 165. In contrast, plaintiff reported to Dr. Webster that he could lift 25 to 30 pounds without any indication that such lifting would cause him pain. Tr. 578. At the January 7, 2010 hearing, plaintiff testified that he does not spend much time on his home computer, at most five or ten minutes a day. Tr. 44. Conversely, in a February 16, 2005 treatment note, Dr. Denker noted that plaintiff reported that he spent "a great deal of time on his home computer" resulting in some neck and back pain the next day. Tr. 253. The ALJ's findings are wholly supported by the record. Thus, I conclude that the ALJ appropriately discredited plaintiff on this basis.

### 3. activities of daily living (ADLs)

As the ALJ correctly noted, plaintiff's variety of activities of daily living are inconsistent with the level of disability he alleges. For example, the ALJ noted that plaintiff takes care of

his four children as part of his daily activities. Tr. 419. In a May 4, 2007 Function Report, plaintiff described a typical day as waking up by 6:30 A.M. to help his children get ready for school. Tr. 161. The ALJ also referred to Dr. Denker's July 21, 2005 treatment note indicating that plaintiff stays home and takes care of his four children. Tr. 250. The ALJ also noted that plaintiff engages in weekly church activities. Tr. 419.

Plaintiff argues that the ALJ erroneously expected plaintiff's daily activities to show a completely debilitating medical impairment, and that plaintiff is unable to perform work on a sustained basis. Plaintiff also contends that his limitations are consistent with his ADLs. I disagree.

While a claimant need not be completely incapacitated to be eligible for disability, here the record shows that plaintiff's activities are fairly extensive. As the ALJ stated, plaintiff's own functioning does not support the frequency, nature, and severity of his alleged pain and limitations. For example, in a December 28, 2005 treatment note, Dr. Denker indicated that plaintiff spent four days stringing up Christmas lights. Tr. 249. An April 30, 2007 physical therapy treatment note indicated that plaintiff aggravated his back after planting flowers in a pot. Tr. 304. Dr. Denker noted in July 2009, plaintiff developed pain in his right lower neck after sawing down a small tree. Tr. 254. Indeed, these activities are not consistent with plaintiff's allegations that maintaining

his head in a vertical position, tilting his head down, and making motions with his arms aggravates his back and neck pain. Tr. 40, 44, 169.

With respect to plaintiff's allegations of neck and back pain due to prolonged sitting or standing, the ALJ fully considered this limitation. Tr. 418-19. The RFC finding incorporates a requirement of no sitting or standing in stationary position for more than two consecutive hours.

Based on this significant evidence in the record, I conclude that the ALJ properly discredited plaintiff's testimony because his level of activity is inconsistent with the degree of impairment that he alleges. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

In sum, I conclude the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount plaintiff's testimony.

## II.  <u>The ALJ Did Not Err in Evaluating Medical Opinions and Evidence</u>

### A.  **Standards**

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating

13 - OPINION AND ORDER

physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148(9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

**B.    John Denker, M.D.**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinions of treating physician Dr. Denker. Plaintiff contends that Dr. Denker's opinions are entitled to great weight because Dr. Denker has a long-standing treating relationship with plaintiff. Dr. Denker has treated plaintiff for eleven years and diagnosed him with cervical and lumbar disc disease. Tr. 250, 254. Dr. Denker prescribed plaintiff Darvocet and later Mobic for pain relief. Tr. 250, 262.

Dr. Denker provided two opinions regarding plaintiff's functioning throughout the relevant period. First, in a July 21, 2005 treatment note, Dr. Denker opined that plaintiff could return to his past sedentary job; Dr. Denker noted that with the "proper modification of his computer and workspace, plaintiff could perform his previous job duties without a significant reduction in speed or increase in physical symptoms." Tr. 250.

Second, in a December 31, 2009 letter, Dr. Denker diagnosed plaintiff with chronic pain syndrome in his cervical and lumbar spines. Tr. 386. Dr. Denker opined that plaintiff cannot perform any work which required him to sit in front of a monitor and use a keyboard continuously. Tr. 386. Dr. Denker further opined that plaintiff cannot work with his arms in front of him for more than a few minutes at a time and is able to alternate sitting and standing, with sitting for no more than 45 minutes at a time and standing for no more than fifteen minutes at a time. *Id.*

Because Dr. Denker's opinions were contradicted,[3] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. In the decision, the ALJ gave Dr. Denker's 2009 opinion "little weight" because it is unsupported by clinical findings and

---

[3] In a June 28, 2007 physical RFC assessment, Martin B. Lahr, a nonexamining physician opined that plaintiff can lift and carry ten pounds frequently and 10 pounds occasionally, and sit, walk, and stand for six hours each in an eight-hour workday. Tr. 363-370.

inconsistent with his 2005 opinion. Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

In the decision, the ALJ indicated that Dr. Denker's own examination findings do not support his 2009 opinion. Tr. 422-23. For example, in September 2009, Dr. Denker documented some tenderness in the cervical and lumbar spine but intact sensation, normal gait, and normal muscle bulk and tone. Tr. 377-78. Dr. Denker's October 2012 examination similarly noted minimal tenderness in his lower back, no muscle spasms, negative straight-leg raise testing, and normal muscle bulk, tone, and strength. Tr. 614. Indeed, Dr. Denker's examinations reflect minimal abnormal objective findings consistently throughout the entire period. *See generally,* 250, 253-54, 257, 265, 377, 609-12, 614, 616. *See Tonapetyan,* 242 F.3d at 1149 (when evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory).

Plaintiff further contends that Dr. Denker's two opinions are consistent with one another because plaintiff's condition deteriorated after 2005, and that the ALJ erred in rejecting his 2009 opinion on this basis.[4] I disagree.

---

[4] Plaintiff also mistakenly argues that a January 2013 Physical Capacity Evaluation, discussed below, formed the objective basis for Dr. Denker's 2009 opinion. Clearly, Dr. Denker's opinion from 2009 could not possibly be based on an evaluation dated four years after his opinion.

16 - OPINION AND ORDER

Contrary to plaintiff's argument, the ALJ provided a detailed discussion of the medical evidence and concluded that the medical record does not show a significant deterioration in plaintiff's condition after 2005. Tr. 418, 420-21. For example, plaintiff's March 2004 x-ray of his cervical spine was normal; similarly, plaintiff's October 2009 cervical x-ray revealed properly positioned hardware, asymmetric disc osteophyte formation, and no foraminal stenosis. Tr. 352, 635. A July 2, 2008 consultative examination by Kevin J. Kane, D.O., indicated good gross range of motion, intact reflexes, and no clear nerve root tension signs. Tr. 389. Dr. Kane's examination findings are fairly similar to Dr. Denker's examinations in 2004 and 2005, which indicated intact sensation, muscle strength, and muscle tone. *See generally* Tr. 247-48, 250, 253-55, 373. To be sure, plaintiff only cites to his increased allegations of pain, which the ALJ appropriately discounted, as evidence that his medical condition has deteriorated.

The ALJ appropriately relied on the opinion of plaintiff's treating orthopedic surgeon, Darrell C. Brett over Dr. Denker's opinions precisely because plaintiff's medical condition has remained relatively stable without evidence of a further injury.[5]

---

[5] Plaintiff also argues that the ALJ's reliance on Dr. Brett's opinion is misplaced because it is dated prior to plaintiff's alleged date of disability. Pl. Br. (#22) p. 15. As this court declines to accept plaintiff's belated request to amend his alleged date of disability to March 21, 2007, Dr.

Tr. 417-18. In giving "great weight" to Dr. Brett's opinion, the ALJ noted that Dr. Brett's physical assessment of plaintiff's limitations is consistent with Dr. Brett's clinical findings and supported by the overall medical record. Tr. 418.

Dr. Denker referred plaintiff to Dr. Brett in October 2003. Tr. 341. On January 21, 2004, Dr. Brett performed plaintiff's anterior cervical discectomy and interbody fusion at C5-7; subsequent follow up examinations in February and March 2004 indicated that plaintiff was healing nicely from surgery. Tr. 338-340. In an April 21, 2004 examination, Dr. Brett noted intact strength, sensation, and myotatic reflexes and with a minor reduction in range of motion in his lumbar back. Tr. 339. Dr. Brett further noted that plaintiff is able to heel and toe walk and repetitively toe stand without difficulty and has unrestricted neck movement. *Id.* Based on this examination, Dr. Brett opined that plaintiff has a moderate permanent partial disability: plaintiff should not lift or carry more than 25 pounds, perform any repetitive lifting, bending or stooping, or be required to sit or stand in a stationary position for more than two consecutive hours. *Id.* Dr. Brett further opined that plaintiff is "now considered medically stationary with regard to his cervical and lumbar injury." Tr. 339, 362.

---

Brett's 2004 opinion is relevant to plaintiff's original alleged onset date of disability of March 15, 2003. *See* Footnote 1.

18 - OPINION AND ORDER

Moreover, the ALJ found that Dr. Brett's opinion is consistent with more recent examining physicians' clinical findings. For example, in a February 16, 2010 examination, Dr. Brennke noted mildly reduced range of motion in the lumbar and cervical spine, intact sensation and reflexes, and a negative straight leg raise test. Tr. 395-96. Dr. Brenneke opined that plaintiff can lift and carry up to 20 pounds frequently and 50 pounds occasionally, stand and walk for four hours, and sit for eight hours in an eight-hour workday. Tr. 399. In giving Dr. Brenneke's opinion "great weight," the ALJ accurately found that Dr. Brenneke's opinion is supported by clinical findings and consistent with the overall medical record. Tr. 422.

Plaintiff challenges the "great weight" accorded by the ALJ to Dr. Brenneke's opinion on the basis that Dr. Brenneke's inability to review plaintiff's previous medical records materially affected his opinion. Plaintiff's argument is erroneous; a consultative examiner is not legally obligated to review claimant's medical records. *See Castaneda v. Astrue*, No. 07-16589, 2009 WL 2778043, (9th Cir. 2009)(holding that ALJ did not err in relying on the report of a consultative examiner who did not review a previous MRI record because the examiner's report rested on his own independent examination of plaintiff); *Anderson v. Astrue*, No. Co8-5734BHS, 2009 WL 3297247, (W.D. Wash. Oct. 14, 2009); *Fortes v. Astrue,* 2009 WL 734161, *3 (S.D. Cal. Mar. 18, 2009)(ALJ did not err in relying

19 - OPINION AND ORDER

on a report from a consultative examiner who failed to review claimant's medical records because the examiner obtained a medical history from plaintiff and performed his own orthopedic examination). Here, Dr. Brenneke performed an independent orthopedic examination and obtained a comprehensive medical history from plaintiff. Tr. 393-94.

Furthermore, as the ALJ discussed, a March 11, 2013 consultative examination by Kim Webster, M.D., documented similar findings to Dr. Brett's examination. Specifically, Dr. Webster noted that plaintiff had a normal gait, a normal Romberg test, negative straight leg raise testing, full muscle strength and tone, and intact sensation. Tr. 580-81. Dr. Webster observed a straight spine, nontender to palpation or percussion and no atrophy of the paraspinous muscles of the cervical, thoracic or lumbar spine. Tr. 581. Dr. Webster diagnosed low back and neck pain with a normal neuromuscular examination; Dr. Webster opined that there was no objective evidence limiting plaintiff's ability to stand, walk, sit, lift or carry. Tr. 582-88. Dr. Webster's opinion is based on her own independent examination and a review of some of plaintiff's medical records. Tr. 575-577. Dr. Webster's examination further supports Dr. Brett's opinion and is consistent with the overall medical record. Tr. 423. I conclude the ALJ did not err in assessing Dr. Webster's opinion.

Finally, the ALJ also accorded "great weight" to the opinion of nonexamining physician, Martin B. Laher, M.D. In a June 28, 2007 physical RFC assessment, Dr. Laher opined that plaintiff can lift and carry ten pounds frequently and 20 pounds occasionally, stand, walk, and sit for six hours in an eight-hour workday, and can never climb ladders, ropes, and scaffolds. Tr. 364-68. Dr. Laher's opinion is also consistent with the opinions expressed by Drs. Brett and Brenneke. Specifically, Dr. Laher opined that plaintiff can lift and carry 20 pounds occasionally while Drs. Brett opined that plaintiff can lift and carry 25 pounds occasionally.

In summary, the ALJ properly credited Dr. Brett's opinion over Dr. Denker's opinions and adopted Dr. Brett's assessment of plaintiff's limitations into the RFC finding. Tr. 418, 422. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. See e.g., Molina, 674 F.3d at 1111 (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). Therefore, I conclude that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount Dr. Denker's opinions.

### C.   Harold Lee, M.D.

Plaintiff also contends that the ALJ failed to provide specific and legitimate reasons for discounting the opinions of treating physician, Harold Lee, M.D. Dr. Lee examined plaintiff in

2007 and 2013 and diagnosed plaintiff with a history of chronic pain syndrome, history of cervical and lumbar pain, myofascial trigger points, and history of cervical fusion. Tr. 373, 591, 594.

Dr. Lee provided two opinions in connection with plaintiff's social security application. First, in an October 25, 2010 letter, Dr. Lee opined that plaintiff is "unable to use a keyboard and computer monitor continuously or work with his arms extended in front of him for more than a few minutes at a time." Tr. 574. Dr. Lee noted that he treated plaintiff with trigger point injections between June and August 2007. *Id.* Second, in his April 1, 2013 examination report, Dr. Lee further opined that plaintiff most likely can perform sedentary work but must avoid repetitive activities involving his extremities and would need frequent breaks. Tr. 594. Dr. Lee further opined that plaintiff "probably cannot tolerate [a] full time job at the present time." *Id.* Dr. Lee further noted that plaintiff lost his job and has not been working since 2003, making it less likely for him to be productive in the job market "due to his poor endurance and multiple areas of active trigger points." *Id.*

In the decision, the ALJ gave Dr. Lee's opinions "little weight" because the opinions are inconsistent with Dr. Lee's own examination findings, consider non-medical factors, and are inconsistent with the overall medical record. Having carefully

reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

A medical opinion's inconsistency with the objective medical record may constitute an adequate reason to discredit that opinion. *Tommasetti*, 533 F.3d at 1041. As the ALJ correctly found, Dr. Lee's examination findings are inconsistent with his 2010 and 2013 opinions. As the ALJ clearly emphasized, Dr. Lee noted the absence of findings to support radiculopathy or myelopathy of the cervical and lumbar back. Tr. 421. For example, in a June 20, 2007 examination, Dr. Lee noted 5/5 muscle strength; intact sensation; negative straight leg raise and Lasegue testing; and no evidence of muscle atrophy. Tr. 373. Dr. Lee diagnosed chronic cervical and low-back pain, status post-cervical fusion. Dr. Lee also noted that plaintiff reported that his neck surgery resolved the continuous numbness in his hands. Tr. 371. In an April 1, 2013 examination, Dr. Lee again noted full motor strength, intact reflexes and sensation, but mild restriction in range of motion in the lumbar and cervical spines and tenderness in lumbar muscles. Tr. 593-94.

In fact, the ALJ found that plaintiff's 2013 examination with Dr. Lee indicated "almost identical signs and findings" to Dr. Lee's 2007 examination, further supporting the ALJ's conclusion that plaintiff's medical condition has remained relatively stable since 2004. Tr. 421. While Dr. Lee indicated that he treated plaintiff from June 2007 to August 2007 with trigger point

23 - OPINION AND ORDER

injections and chronic pain, the medical record is devoid of any records documenting such treatment. Tr. 574. The record only provides reports of Dr. Lee's 2007 and 2013 examinations. Tr. 371, 591.

The ALJ also discounted Dr. Lee's 2013 opinion because Dr. Lee considered the length of time plaintiff was out of the workforce. In weighing medical opinions, the ALJ is instructed to consider specific factors: length of treatment relationship and frequency of examination; supportability from medical signs and clinical findings; specialization; and any other factors raised by a claimant. *Orn*, 495 F.3d at 631; 20 C.F.R. §§ 404.1527(c), 416.927(c). In this case, it was appropriate for the ALJ to discount Dr. Lee's 2013 opinion that plaintiff is unlikely to be productive in the job market, in part because he has been out of the workforce for ten years. Tr. 594, 422. The length of plaintiff's absence from the workforce is not related to the severity of plaintiff's impairments and any resulting physical limitations.

Finally, the ALJ discounted Dr. Lee's opinions on the basis of inconsistency with the medical record. As discussed above, Drs. Brett, Webster, Kane and Brenneke noted relatively normal examination findings with intact sensation and reflexes, no evidence of muscle atrophy and full muscle strength. Tr. 339, 388-89, 395-96, 581-82. Indeed, Dr. Denker's treatment notes also

reflect relatively normal clinical findings throughout the period at issue. *See generally,* Tr. 248, 250, 255, 606-629.

In summary, I conclude that the ALJ did not err in evaluating Dr. Lee's opinions, and has provided specific and legitimate reasons backed by substantial evidence in the record as a whole.

D.    **Physical Capacity Evaluation**

Plaintiff also argues that the ALJ erred in giving "little weight" to the January 10, 2013 physical capacity evaluation performed by occupational therapist, Trevor Tash. Mr. Tash examined plaintiff and noted full strength, intact sensation and reflexes, and a slow gait. Tr. 601. Based on his functional evaluation, Mr. Tash opined that plaintiff is capable of part-time sedentary work but cannot continuously use a keyboard or mouse. Tr. 597-98. Mr. Tash also opined that the results of the physical capacity evaluation support Dr. Denker's 2009 opinion and Dr. Lee's 2010 opinion, both indicating that plaintiff is unable to sit in front of a monitor and continuously use a keyboard. *Id.*

The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine,* 574 F.3d at 694. Here, the ALJ provided several germane reasons for giving "little weight" to Mr. Tash's opinions. First, the ALJ discounted Mr. Tash's opinions on the basis that Mr. Tash is not an acceptable medical source. As an occupational therapist, Mr. Tash is defined as an "other" non-medical source

25 - OPINION AND ORDER

under the regulations, and the ALJ may accord less weight on this basis. *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d), 416.913(d). As discussed previously, the ALJ gave greater weight to Dr. Brett's opinion because it is supported by substantial evidence. Second, the ALJ noted Mr. Tash's opinions are inconsistent with plaintiff's own reported functional abilities. Mr. Tash opined that plaintiff is able to perform sedentary work, which includes lifting and carrying ten pounds frequently and 20 pounds occasionally. In contrast, plaintiff reported to Dr. Webster that he could lift 25 to 30 pounds. Tr. 578.

Finally, the ALJ also discredited Mr. Tash's opinions because they are identical to the 2009 opinion of Dr. Denker and the 2010 opinion of Dr. Lee. Consequently, the ALJ's reasons, which are supported by substantial evidence, for providing "little weight" to the opinions of Drs. Denker and Lee also extend to Mr. Tash's opinions; namely, the fact that Mr. Tash's opinions are inconsistent with the overall medical record and his own clinical findings. Thus, the ALJ has provided three germane reasons for assessing "little weight" to Mr. Tash's opinions.

III. **The ALJ Did Not Err at Step Two**

Plaintiff contends that the ALJ erred by failing to discuss his impairment of chronic pain syndrome and find it was a severe impairment at Step Two. "ALJ's inquiry at step two "is a de minimis

screening device to dispose of groundless claims.'" *Smolen. v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Once a claimant meets the threshold determination of having a valid disability claim, the sequential evaluation process continues. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In a December 31, 2009 letter, Dr. Denker opined that plaintiff "suffers from chronic pain syndrome in his cervical and lumbar spine." Tr. 386. In an April 1, 2013 examination report, Dr. Lee opined that plaintiff has a history of chronic pain syndrome. Tr. 594.

Step two was resolved in plaintiff's favor when the ALJ found that plaintiff has severe impairments of degenerative disc disease cervical and lumbar. An error in failing to list a condition at Step Two is harmless if the ALJ considers the limitations posed by the allegedly omitted condition in formulating the RFC. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Thus, the Court may only find harmful error if plaintiff's alleged functional limitations caused by his chronic pain was not accounted for in the RFC. *Lewis*, 498 F.3d at 911.

The ALJ appropriately considered plaintiff's chronic back pain and any resulting limitations in the RFC finding. In the decision, the ALJ specifically discussed plaintiff's chronic pain in great detail. Tr. 419. Here, the only evidence of the impact of plaintiff's chronic pain on his functional abilities is plaintiff's own testimony, which the ALJ appropriately discounted as discussed

27 - OPINION AND ORDER

above. Indeed, Dr. Brennke opined that the severity of plaintiff's pain was inconsistent with his objective findings. Moreover, as previously discussed, the ALJ appropriately discounted Dr. Lee's opinion.

Plaintiff also unsuccessfully argues that the ALJ failed to consider side effects he experiences from his pain medications. In considering and discounting *all* of plaintiff's testimony, the ALJ also considered the side effect of drowsiness from pain medications such as Darvocet. Tr. 419-20. As discussed above, in assessing plaintiff's RFC, the ALJ gave "great weight" to Dr. Lahr's opinion; Dr. Lahr specifically considered plaintiff's side effect of drowsiness in his opinion. Tr. 368. To be sure, the medical record does not document plaintiff reporting side effects from his pain medications to treating or examining physicians.

In summary, I conclude that the ALJ did not err at Step Two. While plaintiff alleges severe pain due to his back, plaintiff has cited no objective evidence in the record establishing that his back pain impairs his ability to function beyond the limitations included in the ALJ's modified medium duty RFC finding. Tr. 23. Because plaintiff has not shown his chronic pain causes additional functional limitations not accounted for in the RFC, any alleged step two error was harmless. *Lewis*, 498 F.3d at 911.

IV.  **The ALJ Did Not Err in Assessing Lay Testimony**

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner of Soc. Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

In a May 7, 2007 Third Party Adult Function Report, plaintiff's wife, Patricia Sims, noted that plaintiff spends a typical day helping his children get ready for school, completes laundry, and watches television in the evening before bed. Tr. 172. Mrs. Sims also noted that plaintiff makes lunch "sometimes" and cuts the lawn with a self-propelling mower. Tr. 174. Mrs. Sims reported that plaintiff drives a car and grocery shops twice a month. Tr. 175. Mrs. Sims further noted that plaintiff can only lift a limited amount of weight, can walk approximately two blocks at one time, and has difficulty standing and sitting for long periods of time. Tr. 177.

Mrs. Sims also testified at the January 7, 2010 hearing that plaintiff was much more active before the accident in 2003. Tr. 53. Mrs. Sims also testified that plaintiff spends the majority of his time watching television but has to change positions from sitting

29 - OPINION AND ORDER

to standing or walking every fifteen to 30 minutes. *Id.* Mrs. Sims testified that she has to perform most of the household chores because plaintiff is fatigued easily. *Id.* Mrs. Sims further testified that plaintiff drives infrequently because his pain medications make him drowsy. Tr. 54.

In the instant action, plaintiff argues that the ALJ failed to provide sufficient reasons for discounting Mrs. Sims's statements concerning plaintiff's pain in his neck and back. I disagree.

In the decision, the ALJ gave Mrs. Sims's statements about plaintiff's physical limitations and symptoms "little weight." Tr. 424. In discrediting Mrs. Sims's testimony, the ALJ provided two specific reasons: inconsistency with the medical record and lack of specificity.

As the ALJ correctly noted, Mrs. Sims's observations regarding plaintiff's pain and physical limitations are inconsistent with the medical record. Mrs. Sims reported that plaintiff experiences significant pain that wakes him during the night, yet as the ALJ noted the majority of plaintiff's examinations after his 2004 cervical surgery are relatively normal. *See generally* Tr. 339, 373, 395, 420-21, 580, 593. As discussed above, the ALJ further noted that Drs. Brett, Benneke, and Lee all ruled out a possibility of pain due to radiculopathy or myelopathy. Tr. 340, 373, 396. Although Mrs. Sims testified that plaintiff experiences drowsiness as a side effect of his medications, plaintiff did not report such

30 - OPINION AND ORDER

a side effect to Dr. Denker. Tr. 55, 248-274, 606-638. Thus, I conclude that the ALJ's first reason is germane to Mrs. Sims's testimony. *Valentine*, 574 F.3d at 694.

The ALJ also discounted Mrs. Sims's testimony that plaintiff's activities are limited by pain because her statements lack specificity. The ALJ discussed that Mrs. Sims's statement that plaintiff can stand to "sometimes" make lunch is of less evidentiary value in determining plaintiff's RFC because "sometimes" does not quantify how often plaintiff makes lunch. Tr. 424. Plaintiff contends that Mrs. Sims's statements were specific in indicating that her husband is unable to sit and type at a computer for more than 30 minutes at a time. I disagree.

After careful review of the record, I find no evidence of such explicit testimony from Mrs. Sims. In fact, Mrs. Sims testified at the 2010 hearing that plaintiff uses a computer "every once in a while" but that he is unable to use it for "too long." Tr. 54. Other statements from Mrs. Sims further support the ALJ's reasoning. For example, Mrs. Sims testified that plaintiff does not drive often because he is uncomfortable driving for "him to be in a car for too long." Tr. 55. To be sure, Mrs. Sims failed to provide clear testimony quantifying how long plaintiff is able to perform certain tasks such as use a computer or stand or drive a car. Accordingly, as discussed above, the ALJ provided two germane reasons for partially discrediting Mrs. Sims's testimony. *See*

31 - OPINION AND ORDER

*Bayliss,* 427 F.3d at 1218 (ALJ provided germane reasons for rejecting portions of lay testimony that was inconsistent with claimant's activities and objective evidence).

## V.  ALJ Did Not Err in Evaluating VE Testimony

At step four, the claimant has the burden to show he can no longer perform his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). However, the ALJ must still provide factual findings to support his step four conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* at 845.

Plaintiff argues that the ALJ's step four finding is not supported by substantial evidence because neither the ALJ nor the VE provided a specific Dictionary of Occupational Titles (DOT) code for his past relevant work. I disagree.

At the hearing, the ALJ asked the VE to identify plaintiff's past relevant work. The VE testified that plaintiff had one occupation for the past 20 years in credit and collections and classified plaintiff's past work as sedentary, skilled with a specific vocational preparation (SVP) 5, but failed to cite a corresponding DOT code. Tr. 59. The ALJ posed a hypothetical to the VE incorporating all of the limitations of the RFC finding. The VE testified that an individual with these limitations could still

perform plaintiff's past relevant work and confirmed that his testimony was consistent with the DOT. Tr. 59, 60. In the decision, the ALJ specifically stated: "in comparing the claimant's overall RFC set forth above, with the physical and mental demands of [his past work], I find that the claimant is able to perform his past relevant work of Credit Collections Clerk both as actually and generally performed. Tr. 424.

At step four, VE testimony is not required. *See Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993)(holding at step four "VE testimony was useful, but not required"); *Parker v. Astrue*, No. 2:07-cv-06887-AN, 2010 WL 2531884, (9th Cir. June 16, 2010)(where evidence sufficiently supports the ALJ's classification of past relevant work, the ALJ was not required to seek the input of a VE). In this case, a cursory search of the DOT reveals three jobs for a "Credit Collections Clerk," requiring a sedentary level of work with an SVP 5. *Dictionary of Occupational Titles*, §§ 205.367-022, 216.362-014, 241.357-010. These jobs do not exceed the ALJ's RFC finding and are consistent with the VE's classification of plaintiff's past relevant work.[6] Tr. 59.

The three Credit Collections jobs also match plaintiff's description of his past work. In a June 10, 2007 Work History Report, plaintiff described his past work as collection of payments

---

[6] A state disability analyst also classified plaintiff's past work as a collections clerk as generally performed in the national economy, citing to DOT § 241.357-010. Tr. 189.

33 - OPINION AND ORDER

on past-due and delinquent accounts at a sedentary level. *Compare*
Tr. 181-188, *with* DOT §§ 205.367-022, 216.362-014, 241.357-010. At
the January 2010 hearing, plaintiff testified that his past work
was typical of other jobs in that industry in terms of physical
demand. Tr. 42. To be sure, plaintiff does not challenge the ALJ's
classification of his past relevant work as a Credit Collections
Clerk. Thus, I conclude that the ALJ's finding that plaintiff is
able to perform his past work as generally performed is supported
by substantial evidence. Tr. 424.

Furthermore, the ALJ's finding that plaintiff can perform his
past relevant work as actually performed is also supported by the
record. Plaintiff primarily alleges that he cannot perform his past
work because he is unable to type in front of a computer for long
periods of time; however, the ALJ properly discounted plaintiff's
testimony as discussed above. Tr. 419. Thus, the ALJ's finding at
Step Four is supported by substantial evidence in the record.

In sum, the ALJ's failure to cite a DOT code is a harmless
error at best. An ALJ's error is harmless if it is inconsequential
to the ultimate nondisability determination. *Stout,* 454 F.3d at
1055; *see also Matthews*, 10 F.3d at 681 (ALJ's failure to include
a limitation in a hypothetical to the VE was harmless error because
VE testimony is not required at Step Four).

I decline to address plaintiff's argument that he meets the
criteria of Medical Vocational Rule 201.14. The Medical Vocational

34 - OPINION AND ORDER

Rules are applied at Step Five and provide a method for determining the availability and numbers of suitable jobs for a claimant. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 404.1520. Because the ALJ's Step Four finding is supported by substantial evidence, it is unnecessary to address plaintiff's Step Five argument.

### CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this ___/___ day of April, 2015.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

35 - OPINION AND ORDER